UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KENT C. CAMPBELL and MICHELLE M. CAMPBELL,

    Plaintiffs,

v.

WELLS FARGO BANK, N.A. d/b/a WELLS FARGO HOME MORTGAGE,

    Defendant.

Case No. 6:13-cv-01558-AA

OPINION AND ORDER

AIKEN, Chief Judge:

    Plaintiffs filed this action alleging promissory estoppel, fraud, and violations of the Oregon Unfair Trade Practices Act. Or. Rev. Stat. § 646.608. Plaintiffs' claims arise from their attempts to obtain a mortgage loan modification. Plaintiffs seek injunctive relief, damages, and attorney fees. Defendant now moves to dismiss plaintiffs' claims for failure to state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6). The motion is denied.

1   - OPINION AND ORDER

STANDARD

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint is construed in favor of the plaintiff, and its well-pleaded factual allegations are taken as true. Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010). However, the court need not accept "conclusory" allegations, "unwarranted deductions of fact, or unreasonable inferences." Id. Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

BACKGROUND

On or about March 28, 2007, plaintiffs obtained a mortgage loan secured by a Deed of Trust against real property located at 1471 Jefferson Street No. 1 & 2 in Eugene, Oregon. Defendant services the loan and Federal National Mortgage Association ("Fannie Mae") owns the loan.

On or about June 15, 2011, plaintiffs contacted defendant to request a loan modification due to financial hardship. On or about February 16, 2012, defendant approved plaintiffs for a Trial Period

2   - OPINION AND ORDER

Plan ("TPP"). Under the terms of the plan, plaintiffs were to make three monthly payments of $1,543.90 on or before March 1, April 1 and May 1, 2012. The TPP stated "the trial payment amounts set forth above include principal, interest and escrow amounts. After all trial period payments are timely made, your mortgage will be permanently modified." Am. Compl. Ex. 1 at 2.

Plaintiffs made three timely payments. On or about May 28, 2012, defendant notified plaintiffs that it required U.S. Bank, the holder of a lien on the property, to sign a subordination agreement before defendant could approve the loan modification. On the same day, plaintiffs obtained a Subordination Request Form from U.S. Bank and faxed it to defendant the next day.

On or about June 1, 2012, defendant notified plaintiffs that they faxed the incorrect form and sent plaintiffs an alternate form to deliver to U.S. Bank. Plaintiffs made a fourth trial payment on the same day, although they were only required to make three payments under the terms of the TPP.

On or about June 2, 2012, plaintiffs received the alternate subordination agreement form from defendant and delivered it to U.S. Bank the same day. A U.S. Bank representative told plaintiffs that defendant needed to cooperate with U.S. Bank's corporate office and provide requested information to facilitate completion of the form. Plaintiffs communicated this to defendant on or about June 6, 2012. Throughout the month of June, plaintiffs requested

3    - OPINION AND ORDER

that U.S. Bank complete the subordination agreement.

On or about June 26, 2012, defendant sent plaintiffs a form authorizing defendant to disclose plaintiff's account information to U.S. Bank in connection with the subordination agreement. Plaintiffs sent the signed authorization to defendant on or about July 3, 2012. On or about July 1, 2012, plaintiffs made a fifth trial payment, although only three were required under the TPP.

On or about July 24, 2012, defendant notified plaintiffs that it was unable to modify their mortgage loan because it had not received a signed subordination agreement from U.S. Bank. Defendant indicated that U.S. Bank sought information defendant was unable to provide for quality control reasons and due to the information's proprietary nature. Defendant also stated plaintiffs' mortgage was in default and payments were owing as of August 1, 2011. Defendant made no mention of the five payments plaintiffs made under the TPP, beginning on March 1, 2012.

On or about August 6, 2012, plaintiffs attempted to make a payment at a Wells Fargo branch and were told that the bank would not accept their payment.

On or about August 13, 2012, a U.S. Bank representative notified plaintiffs that defendant would only provide plaintiffs' name, account number, and reiterate their request for a signed subordination agreement. Defendant would not provide any loan amounts, values, or an address where U.S. Bank could send the

signed subordination agreement. On or about August 23, 2012, U.S. Bank reports it sent the signed subordination agreement to defendant, although defendant claims it did not receive the agreement until September 17, 2012. It is not clear whether defendant ultimately provided the information U.S. Bank sought in order to complete the subordination agreement, or whether U.S. Bank was able to process the agreement without the information.

On or about September 15, 2012, defendant sent plaintiffs a three-day notice of default stating plaintiffs had not made mortgage payments since August 1, 2011. Again, defendant made no mention of the payments made under the TPP.

On or about September 21, 2012, defendant notified plaintiffs it received the signed subordination agreement from U.S. Bank and requested additional information from plaintiffs, which plaintiffs provided.

On or about October 12, 2012, defendant approved plaintiffs for a second TPP. The terms were identical to the first TPP, except the monthly payment amount had increased to $1,824.90. Trial payments were due on November 1, December 1, 2012 and January 1, 2013. Plaintiffs made three timely payments. Plaintiffs made additional payments in February, March and April, 2013, although they were not required under the terms of the TPP.

On or about April 5, 2013, defendant informed plaintiffs that there were three liens that needed to be satisfied before defendant

5    - OPINION AND ORDER

could grant a permanent modification. Plaintiffs informed defendant that the liens were not related to them or their real property[1]. Also, as of April 7, 2013, defendant had not contacted U.S. Bank or plaintiffs regarding a second subordination agreement required by defendant. On April 30, 2013, plaintiffs retained counsel.

On or about June 19, 2013, defendant sent plaintiffs a permanent loan modification agreement. Plaintiffs were concerned that the agreement required them to "make all remaining trial payments" and requiring the first payment on April 1, 2013. Am. Compl. Ex. 6 at 1. They were also concerned that the modification required plaintiffs to assign all leases, rents and revenues to defendant, without indicating whether defendant would assume landlord responsibilities or whether plaintiffs' account would be credited with any of the assigned revenue.

On or about June 27, 2013, defendant's counsel informed plaintiffs' counsel that if plaintiffs did not sign the modification agreement, defendants would rescind the offered loan modification.

On July 15, 2013, plaintiffs filed suit in Lane County Circuit Court. On September 4, 2013, defendant removed the action to federal court.

---

[1] These liens arose from judgments against other persons with names similar to plaintiff Michelle Campbell.

6    - OPINION AND ORDER

DISCUSSION

Plaintiffs allege claims of promissory estoppel, fraud, and violations of the Oregon Unfair Trade Practices Act (UTPA). Defendants argue that plaintiffs' allegations fail to meet the elements of each claim.[2] I disagree.

A. Promissory Estoppel

Plaintiffs allege a claim for promissory estoppel based on defendant's promise to modify their loan if they made the required TPP payments. In order to state a claim for promissory estoppel, plaintiff must allege facts that evince "(1) a promise, (2) which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred, (3) actual reliance on the promise, (4) resulting in a substantial change in position." Rick Franklin Corp. v. State ex rel. Dept. of Transp., 207 Or. App. 183, 190, 140 P.3d 1136 (2006).

Plaintiffs allege that the TPP documents state "[a]fter all trial period payments are timely made, your mortgage will be permanently modified." Am. Compl. Ex. 1 at 2; Ex. 3 at 1. Plaintiffs allege that defendant could reasonably foresee this promise would induce plaintiffs to make trial plan payments. Plaintiffs allege that as a result of defendant's actions, they did

---

[2]Defendant also requested judicial notice or incorporation by reference of certain documents. The request is granted; however, the Court did not rely on any of the documents in reaching its decision.

7    - OPINION AND ORDER

not pursue other opportunities to cure default on the loan and avoid foreclosure. In addition, plaintiffs allege they made significant trial period plan payments that were not credited to their account in reliance on defendant's promise.

Defendant argues there is no unperformed promise because plaintiffs were eventually offered a permanent modification. Defendant also argues that plaintiffs have not alleged facts to establish a substantial change in position because plaintiffs still possess their property and they do not allege they were prevented from exploring other means of refinancing their mortgage. In addition, defendant argues that plaintiffs trial plan payments do not constitute reliance, because they were already contractually obligated to make monthly mortgage payments.

I am not persuaded by these arguments. Plaintiffs allege that the permanent modification defendant offered was different from the permanent modification it originally promised to give. Further, plaintiffs are not required to allege they lost the property to state a claim for promissory estoppel, and plaintiffs allege they did not pursue other financing options because of defendant's promise to modify the loan. In addition, it is unclear whether the payments plaintiff made under the first or second TPP were ever credited to their account. Finally, plaintiffs allege they made trial plan payments that were different from their contractually required mortgage payments.

Ultimately, defendant's arguments raise questions of fact that are not appropriate to resolve at this stage in the litigation. With all facts and inferences construed in favor of plaintiffs, plaintiffs' claim for promissory estoppel survives defendant's motion to dismiss.

B. Fraud

Plaintiffs allege a claim for fraud based on defendant's false or misleading representations regarding plaintiff's mortgage modification, payment history and status of liens. Fraud requires: 1) a material, false representation; 2) the defendant's knowledge of its falsity; 3) the intent that the plaintiff rely on the misrepresentation; 4) the plaintiff's justifiable reliance on the misrepresentation; and 5) damages. Horton v. Nelson, 252 Or. App. 611, 616, 288 P.3d 967 (2012).

Plaintiffs allege that defendant made multiple false representations, including: that "[a]fter all trial payments are timely made, your mortgage will be permanently modified"; that "trial payment amounts set forth above include principal, interest, and escrow amounts"; that plaintiffs were in default for failing to make payments since August 1, 2011; and that plaintiffs were required to satisfy liens prior to a permanent loan modification. Am. Compl. ¶ 49. Plaintiffs allege defendant knew or should have known these statements were false and misleading and that they concerned plaintiff's property and were therefore material.

9   - OPINION AND ORDER

Further, they allege defendant made the statements with the intention that plaintiff would make payments. Plaintiffs also allege they were ignorant of the falsity of the representations and were justified in relying on them, and that plaintiffs suffered damages including unauthorized late charges, default related fees, miscellaneous fees, the loss of trial plan payments, and losses connected with the inability to refinance their properties as a result.

Defendant argues it did not make materially false statements, and that it did not cause defendants damages, relying on factual arguments that are not appropriate at this stage of the proceedings. Construing all reasonable inferences from the complaint in plaintiffs' favor, plaintiffs allegations suffice to state a claim for fraud.

C. UTPA Violations

Finally, plaintiffs allege violations of UTPA under Or. Rev. Stat. § 646.608. Plaintiffs allege that defendant made false or misleading representations in connection with their second attempt at qualifying for a loan modification. Specifically, plaintiffs allege that as a result of the false or misleading representations, they suffered damages, namely unauthorized late charges, default-related fees, and miscellaneous fees. Contrary to defendant's arguments, whether the statements were, in fact, false or misleading, or whether such damages were, in fact, caused by

defendant's conduct, are not questions appropriately resolved on a motion to dismiss.

## CONCLUSION

Defendants' Motion to Dismiss (doc. 20) is DENIED. Defendant's Request for Judicial Notice or Incorporation by Reference (doc. 23) is GRANTED.

IT IS SO ORDERED.

Dated this 17th day of March, 2014.

_____
Ann Aiken
United States District Judge